**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**MIAMI DIVISION**

Case No.:

At Law and in Admiralty

NANNETTE DALFINO,

     Plaintiff,

vs.

CARNIVAL CORPORATION,

     Defendant.

_____/

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

COMES NOW the Plaintiff, NANNETTE DALFINO ("PLAINTIFF"), by and through her undersigned counsel and hereby sues the Defendant, CARNIVAL CORPORATION ("CARNIVAL"), files her Complaint for damages in this matter, and alleges as follows:

**GENERAL ALLEGATIONS**

1. This is an action seeking damages in excess of seventy-five thousand dollars ($75,000.00), exclusive of interest, costs and attorney's fees.

2. Federal subject matter jurisdiction arises under and is by virtue of the admiralty or maritime jurisdiction pursuant to 28 U.S.C.§ 1333 and by diversity jurisdiction pursuant to § 1332, and is being filed in Federal Court as required by the venue selection clause in the Passenger Contract Ticket issued by the Defendant, CARNIVAL.

3. At all times material hereto, PLAINTIFF was and is a resident and citizen of the State of New York.

4. At all times material hereto, CARNIVAL was and is a Panamanian corporation with its principal place of business in Miami, Miami-Dade County, Florida.

1

CARNIVAL is therefore a citizen of Panama and Florida for jurisdictional purposes.

5.  At all times material hereto, CARNIVAL was the owner and/or operator of the cruise ship, *Venezia.*

6.  All conditions precedent to filing this action have been satisfied, waived, or are otherwise inapplicable.

7.  On or about June 12, 2024, PLAINTIFF was a fare-paying passenger aboard the Carnival *Venezia* and was therefore an invitee entitled to a high duty of care.

8.  On or about June 12, 2024, PLAINTIFF was descending an interior stairway from Deck 10 to Deck 9 aboard the *Venezia* when she encountered a defective and hazardous condition.

9.  Specifically, through overuse and a failure to remedy, the anti-slip rubber strip on the top step nosing became raised and not flush with the remainder of the nosing, creating an unreasonably dangerous condition ("condition").

10. CARNIVAL negligently permitted the condition to remain for an unreasonably lengthy period of time.

11. The unreasonably dangerous condition was compounded by liquid which was negligently left on and/or near the condition.

12. As a result, despite holding onto the handrail, PLAINTIFF's feet slipped forward, she lost her footing and began to fall forcefully down the stairway.

13. While still holding the handrail on her left with her left hand, PLAINTIFF reached back with her right hand to grab the handrail on her right.

14. She landed on her left hip, twisted her right shoulder backward in the fall, injured her left wrist, and lower back.

15. PLAINTIFF was seen the same day by the ship's medical personnel.

2

16. Upon returning to New York, PLAINTIFF began extensive medical treatment, including physical therapy, consultations with multiple specialists, MRIs, and interventional procedures.

17. As a result of CARNIVAL's negligence, PLAINTIFF has suffered significant and permanent injuries, including but not limited to injuries to her left hip, right shoulder, left wrist, and lower back.

18. CARNIVAL is responsible for regularly checking, inspecting, and replacing (when necessary or preventatively) the nosing on all its staircases, specifically those staircases which are often traversed by passengers, so that they will be safe for and not pose unreasonable risk to the passengers.

19. At all times material, this type of nosing with the rubber strip in between metal, has been a common design feature on CARNIVAL's cruise ships fleetwide and has a propensity to separate from the carpet and raise, creating a gap which is a tripping hazard, after repeated maintenance, including vacuuming and/or pedestrian use.

20. CARNIVAL knew or should have known that the nosing of the staircase needs to be adequately and properly maintained, inspected, and remedied so that the nosing does not separate from the carpet and become raised so that a person, whether passenger or crewmember, could not trip and fall while they are descending the stairway.

21. CARNIVAL had actual knowledge of the dangerous condition and/or had constructive knowledge of the dangerous condition because it was created by improper maintenance and/or inspection and/or design to the nosing of the staircase, or by wear and tear over time, and should have been discovered and remedied before PLAINTIFF came into contact with it and suffered severe injuries.

3

22. Moreover, CARNIVAL knew or should have known that having a staircase that had deteriorated over time would cause the staircase step to develop a raised nosing and an exposed gap/lip where the carpet meets the nosing of the staircase thereby becoming a tripping hazard, thus creating a hazard that was not open and obvious to passengers, but was well-known to CARNIVAL.

23. At all relevant times, CARNIVAL was under a legal duty to comply with the National Fire Protection Association (NFPA) Standard NFPA-301, titled "Code for Safety to Life from Fire on Merchant Vessels," which is a safety standard that provides, in relevant part: "**Stair treads shall be uniformly slip-resistant and shall be free of projections or lips that could trip stair users**."  NFPA 301, Code for Safety to Life from Fire on Merchant Vessels.  ¶ 5-2.2.3.4 (1998).

24. At all relevant times, CARNIVAL was under a legal duty to comply with mandatory international vessel safety regulations that are promulgated by the International Maritime Organization (IMO) under authority to expressly conferred by the U.S. Senate-ratified international Safety of Life at Sea (SOLAS) treaty.  For example, the International Maritime Organization, SOLAS, Part C, Regulation 13 ("Means of Escape"), provides at Section 1.2 "**escape routes shall be maintained in a safe condition, clear of obstacles**"; and at Section G4.5 "**Nosings on [stair] treads should be kept to minimum dimensions in order to reduce the risk of passengers tripping over them and should be the same sectional shape on all treads of a stairway**."

25. At all relevant times, CARNIVAL was under a legal duty to comply with industry safety standards that are promulgated by the International Maritime Organization (IMO), the U.S. Coast Guard, the U.S. Access Board, and the American Society for Testing and Materials (ASTM) International.  For example,

4

the ASTM-F1166-07, titled "Standard Practice for Human Engineering Design for Maritime Systems, Equipment, and Facilities," provides, in relevant part: "**The top tread shall be flush with the walking surface to which the stair is attached**." ASTM Standard ASTM-F1166-07, ¶ 11.2.5 (2013 ed.).

26. Prior to PLAINTIFF's incident, CARNIVAL had actual and/or constructive knowledge of the dangerous condition by, among other things:

   a. The length of time the dangerous condition existed;

   b. The nature of the dangerous condition – including that the condition (raised and protruding nosing of the staircase) was unreasonably dangerous and in violation of industry standards, guidelines, regulations, and codes, and was apparent to any of CARNIVAL's personnel cleaning, inspecting, and/or maintaining the staircase, but not readily apparent to PLAINTIFF;

   c. Prior similar incidents reported on the subject cruise ship or other CARNIVAL vessels over the years;

   d. The fact that the nosing on the stairs, when traversed by crew and passengers over time can become raised and must therefore be inspected regularly to ensure ongoing and safe performance; and/or

   e. The fact that the dangerous condition, a similar dangerous condition, or the cause of the dangerous condition was repetitive, continuous, ongoing, recurring, or occurring with some regularity.

27. Furthermore, CARNIVAL was on notice of the dangerous condition(s) causing PLAINTIFF's incident and did not correct them. CARNIVAL's knowledge of the dangerous condition(s) was specifically acquired through prior incidents causing personal injury to CARNIVAL's passengers in the same or substantially similar

5

10800 Biscayne Blvd · Suite 700 · Miami, FL 33161 · Tel: (305) 579-0008 · Fax: (305) 563-7055
www.danielcourtneylaw.com · dc@danielcourtneylaw.com

manner.  See *Dove v. Carnival Corporation,* Case No: 1:24-cv-24552 (passenger tripped over raised nosing while descending on an interior staircase); *Lambert v. Carnival Corporation,* Case No: 1:20-cv-24554 (passenger tripped over defective stair nosing while descending on an interior staircase); and *Ramirez v. Carnival Corporation,* Case No: 1:22-cv-21202 (passenger tripped over raised nosing while descending on an interior staircase).  These are only three (3) of a multitude of instances in which CARNIVAL had been placed on notice of the propensity of the nosing of interior staircases to deteriorate and pose a significant risk to traversing passengers.

28. In the alternative, CARNIVAL created the dangerous condition through its active negligence, and thus, notice is not required.

29. PLAINTIFF has complied with all conditions precedent to the filing of this lawsuit.

30. As a direct and proximate result of CARNIVAL's negligence, PLAINTIFF sustained bodily injuries, resulting pain and suffering, disability, mental anguish, loss of enjoyment of life, medical expenses, lost wages, loss of future earning capacity, and other damages which are either permanent or continuing in nature.

### COUNT I – NEGLIGENT FAILURE TO MAINTAIN

*PLAINTIFF re-alleges paragraphs 1 through 30 as if fully set forth herein.*

31. CARNIVAL owed PLAINTIFF a duty to exercise reasonable care under the circumstances for the safety of its passengers, including maintaining its premises in a reasonably safe condition.

32. CARNIVAL breached its duty by failing to maintain the subject stairway in a safe condition, allowing the anti-slip rubber strip on the top step nosing to become and to remain raised and not flush with the remainder of the nosing.

6

10800 Biscayne Blvd · Suite 700 · Miami, FL 33161 · Tel: (305) 579-0008 · Fax: (305) 563-7055
www.danielcourtneylaw.com · dc@danielcourtneylaw.com



33. CARNIVAL either knew or should have known of the defective condition through the exercise of reasonable care, including regular inspections.

34. It is clear that CARNIVAL breached its duty as there were numerous nosings on the same stairway that were defective.

35. The defective nosing that caused PLAINTIFF's fall existed for an unreasonable period of time prior to the incident.

36. CARNIVAL failed to implement or enforce adequate safety inspection, maintenance, and repair protocols that would have identified and addressed the dangerous condition.

37. CARNIVAL was aware of the propensity for this incident to occur due to an extensive list of past lawsuits and injuries directly related to negligent conditions existing on the nosing of interior staircases.

38. As a direct and proximate result of CARNIVAL's negligence, PLAINTIFF sustained bodily injuries, resulting pain and suffering, disability, mental anguish, loss of enjoyment of life, medical expenses, and other damages which are either

7

permanent or continuing in nature.

WHEREFORE, PLAINTIFF demands judgment for damages against the Defendant together with costs of this action, prejudgment interest, and any other relief deemed just and appropriate by this Honorable Court.  Furthermore, PLAINTIFF demands trial by jury of all matters so triable as a matter of right.

## COUNT II – NEGLIGENT FAILURE TO WARN

*PLAINTIFF hereby re-alleges paragraphs 1 through 30 as if fully set forth herein.*

39. CARNIVAL owed PLAINTIFF a duty to warn of dangers it knew or should have known about and that were not open and obvious to a reasonable passenger.

40. The condition constituted a latent hazard not readily apparent to passengers descending the stairs.

41. CARNIVAL failed to warn passengers, including PLAINTIFF, of the dangerous condition presented by the condition.

42. At the time of the incident, there were no signs, barriers, or warnings posted regarding the hazardous condition.

43. CARNIVAL had superior knowledge of the hazard, particularly given that there have been so many substantially similar prior incidents, and CARNIVAL's employees are trained to look daily for any hazards that need to be remedied.

44. CARNIVAL was aware of the propensity for this incident to occur due to an extensive list of past lawsuits and injuries directly related to negligent conditions existing on the nosing of interior staircases.

45. As a direct and proximate result of CARNIVAL's failure to warn, PLAINTIFF sustained bodily injuries, resulting pain and suffering, disability, mental anguish, loss of enjoyment of life, medical expenses, and other damages which are either permanent or continuing in nature.

10800 Biscayne Blvd · Suite 700 · Miami, FL 33161 · Tel: (305) 579-0008 · Fax: (305) 563-7055
www.danielcourtneylaw.com · dc@danielcourtneylaw.com

WHEREFORE, PLAINTIFF demands judgment for damages against the Defendant together with costs of this action, prejudgment interest, and any other relief deemed just and appropriate by this Honorable Court.  Furthermore, PLAINTIFF demands trial by jury of all matters so triable as a matter of right.

## COUNT III – NEGLIGENT TRAINING PERSONNEL

*PLAINTIFF hereby re-alleges paragraphs 1 through 30 as if fully set forth herein.*

46. CARNIVAL owed a duty to exercise reasonable care for the safety of their passengers.  CARNIVAL owes a duty as a common carrier to its passengers to train its crew members to properly inspect, maintain, fix, and warn of dangers known to CARNIVAL where CARNIVAL invites or reasonably expects passengers to go.  CARNIVAL's duty of care includes training its crew members to inspect, maintain, fix, and warn passengers about dangerous conditions on board the Carnival *Venezia* including where PLAINTIFF tripped and fell.

47. CARNIVAL had actual notice and/or constructive notice of the dangerous condition as alleged above.

48. CARNIVAL should have become aware that it had failed to properly train its crew members given that the crew member(s) failed to inspect, fix, maintain, and warn of the dangerous condition(s) that existed on the subject staircase.

49. CARNIVAL should have become aware that it had failed to properly train its crew members given that crew members who traversed the subject interior staircase failed to properly identify the dangerous condition(s) that existed on the subject staircase prior to PLAINTIFF's incident.

50. CARNIVAL should have become aware that it had failed to properly train its crew members given that the crew members were failing to properly warn passengers of the dangerous conditions that existed on the subject staircase.

9

51. CARNIVAL breached its duty of care owed to PLAINTIFF and was negligent by failing to reasonably train its crew members to inspect, fix, maintain, and warn passengers of the dangerous conditions onboard the Carnival *Venezia*, especially on interior staircases with defective conditions.

52. CARNIVAL failed to comply with industry standards regarding how to train its crew members to inspect and maintain the flooring and warn passengers of dangerous conditions that exist on the flooring, especially in areas of ingress or egress like the subject stairway.

53. CARNIVAL was negligent in the implementation or operation of its training program and said negligence caused PLAINTIFF's damages.

54. At the time PLAINTIFF fell on the subject interior staircase, the crew member(s) that was/were responsible for identifying the condition failed to do so.

55. Alternatively, the crew member(s) told to fix the condition failed to do so.

56. Because that/those crew member(s) was/were not properly trained, said crew member failed to properly and adequately warn passengers, like PLAINTIFF, of the dangerous conditions on board the Carnival *Venezia,* including the subject interior staircase, that crew member also failed to properly inspect, maintain, and fix the defective area.

57. Alternatively, CARNIVAL never trained their crew to identify hazards such as the condition.

58. Alternatively, CARNIVAL never trained their crew to warn passengers once a dangerous condition has been identified.

59. CARNIVAL's failure to properly train its crew members proximately caused PLAINTIFF's injuries.  Had CARNIVAL properly trained its crew members to inspect, maintain, fix, and/or warn passengers about the dangerous conditions

10

onboard the Carnival *Venezia*, including the subject staircase where PLAINTIFF tripped and fell, a crew member would have inspected, maintained, fixed, and/or warned PLAINTIFF about the dangerous condition.  Had CARNIVAL properly trained its crew members, the dangerous condition would not have existed.  Had CARNIVAL properly trained its crew members, PLAINTIFF would have been aware of the dangerous condition and this incident would never have occurred.

60. As a direct and proximate result of CARNIVAL's negligent training of its personnel, PLAINTIFF sustained bodily injuries, resulting pain and suffering, disability, mental anguish, loss of enjoyment of life, medical expenses, and other damages which are either permanent or continuing in nature.

WHEREFORE, PLAINTIFF demands judgment for damages against the Defendant together with costs of this action, prejudgment interest, and any other relief deemed just and appropriate by this Honorable Court.  Furthermore, PLAINTIFF demands trial by jury of all matters so triable as a matter of right.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues so triable.

DATED this 8th day of June, 2025.

> Daniel W. Courtney, P.A.
> 10800 Biscayne Boulevard
> Suite 700
> Miami, Florida, 33161
> Telephone: (305) 579-0008
> Facsimile: (305) 563-7055
> dc@danielcourtneylaw.com
> asher@danielcourtneylaw.com
> maria.wright@danielcourtneylaw.com
>
> By: s/ Daniel W. Courtney
> Daniel W. Courtney, Esq.
> Florida Bar No: 0499781

11