**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**MIAMI DIVISION**

Case No.: 1:25cv22602

At Law and in Admiralty

NANNETTE DALFINO,

    Plaintiff,

vs.

CARNIVAL CORPORATION,

    Defendant.

_____/

**PLAINTIFF'S AMENDED COMPLAINT FOR DAMAGES**

COMES NOW the Plaintiff, NANNETTE DALFINO ("PLAINTIFF"), by and through her undersigned counsel and hereby sues the Defendant, CARNIVAL CORPORATION ("CARNIVAL"), files her Amended Complaint for damages in this matter, and alleges as follows:

**GENERAL ALLEGATIONS**

1. This is an action seeking damages in excess of seventy-five thousand dollars ($75,000.00), exclusive of interest, costs and attorney's fees.

2. Federal subject matter jurisdiction arises under and is by virtue of the admiralty or maritime jurisdiction pursuant to 28 U.S.C.§ 1333 and by diversity jurisdiction pursuant to § 1332, and is being filed in Federal Court as required by the venue selection clause in the Passenger Contract Ticket issued by the Defendant, CARNIVAL.

3. At all times material hereto, PLAINTIFF was and is a resident and citizen of the State of New York.

1

4. At all times material hereto, CARNIVAL was and is a Panamanian corporation with its principal place of business in Miami, Miami-Dade County, Florida. CARNIVAL is therefore a citizen of Panama and Florida for jurisdictional purposes.

5. At all times material hereto, CARNIVAL was the owner and/or operator of the cruise ship, *Carnival Venezia*.

6. In 2015, CARNIVAL, through its subsidiary Carnival Cruise Line, entered into a design and construction agreement with Fincantieri to build a new class of vessels, including the *Costa Venezia*, to CARNIVAL's specifications, whereby CARNIVAL demonstrated control over design, materials, and ability to alter ship specifications pre-delivery.

7. *Costa Venezia* was launched in 2019 for CARNIVAL's sister brand Costa Cruises, but in 2023, CARNIVAL reassigned and refit the ship into the *Carnival Venezia*, demonstrating CARNIVAL's control over design, materials, and ability to alter ship specifications post-delivery.

8. All conditions precedent to filing this action have been satisfied, waived, or are otherwise inapplicable.

9. On or about June 12, 2024, PLAINTIFF was a fare-paying passenger aboard the *Carnival Venezia* and was therefore an invitee while on the vessel.

10. Individuals lawfully on the *Carnival Venezia* who are not crew members are owed a duty of reasonable care under the circumstances. *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625 (1959).

11. Before the subject incident, a housekeeping employee of CARNIVAL knew there was water in the area of the subject incident, and placed a single caution cone on the floor near the site of the subject incident, but not within the line of sight

2

of Plaintiff.

12. Despite this knowledge, CARNIVAL's crewmember failed to properly clean, dry, and/or repair the stairway surface and the defective nosing, thereby allowing a portion of the step and surrounding area to remain unreasonably dangerous and slippery.

13. Moreover, CARNIVAL's crewmember failed to adequately place warning signs, barriers, or other appropriate safety measures to properly warn passengers of the dangerous condition of the stairway.

14. In addition, CARNIVAL's crewmember failed to promptly notify their supervisor or security personnel or Guest Services of the hazardous condition, thereby preventing timely correction or warning of the danger and further contributing to Plaintiff's incident.

15. Unfortunately that same housekeeping employee did not properly mop/clean/dry the area and thus a portion of the floor that was at least several feet away from the caution cone was wet and created a dangerous condition on the floor that was unreasonably slippery when wet.

16. Moreover, that same housekeeping employee failed to properly place additional, necessary caution cones to properly warn CARNIVAL's passengers of the dangerous condition.

17. On or about June 12, 2024, PLAINTIFF was descending an interior stairway from Deck 10 to Deck 9 aboard the *Venezia* when she encountered a defective and hazardous condition.

18. Specifically, through overuse and a failure to remedy, the anti-slip rubber strip on the top step nosing became raised and not flush with the remainder of the nosing, creating an unreasonably dangerous condition ("condition").

10800 Biscayne Blvd · Suite 700 · Miami, FL 33161 · Tel: (305) 579-0008 · Fax: (305) 563-7055
www.danielcourtneylaw.com · dc@danielcourtneylaw.com

19. CARNIVAL negligently permitted the condition to remain for an unreasonably lengthy period of time.

20. The unreasonably dangerous condition was compounded by liquid which was negligently left on and/or near the condition.

21. As a result, despite holding onto the handrail, PLAINTIFF's feet slipped forward, she lost her footing and began to fall forcefully down the stairway.

22. While still holding the handrail on her left with her left hand, PLAINTIFF reached back with her right hand to grab the handrail on her right.

23. She landed on her left hip, twisted her right shoulder backward in the fall, and injured numerous other parts of her body including her left wrist and lower back.

24. PLAINTIFF was seen the same day by the ship's medical personnel.

25. Upon returning to New York, PLAINTIFF began extensive medical treatment, including physical therapy, consultations with multiple specialists, MRIs, and interventional procedures, including surgeries.

26. As a result of CARNIVAL's negligence, PLAINTIFF has suffered significant and permanent injuries, including but not limited to injuries to her left hip, right shoulder, left wrist, and lower back.

27. CARNIVAL is responsible for regularly checking, inspecting, and replacing (when necessary or preventatively) the nosing on all its staircases, specifically those staircases which are often traversed by passengers, so that they will be safe for and not pose unreasonable risk to the passengers.

28. At all times material, this type of nosing with the rubber strip in between metal, has been a common design feature on CARNIVAL's cruise ships fleetwide and has a propensity to separate from the carpet and raise, creating a gap which is a tripping hazard, after repeated maintenance, including vacuuming and/or

4

pedestrian use.

29. CARNIVAL knew or should have known that the nosing of the staircase needs to be adequately and properly maintained, inspected, and remedied so that the nosing does not separate from the carpet and become raised so that a person, whether passenger or crewmember, could not trip and fall while they are descending the stairway.

30. CARNIVAL had actual knowledge of the dangerous condition and/or had constructive knowledge of the dangerous condition because it was created by improper maintenance and/or inspection and/or design to the nosing of the staircase, and/or by wear and tear over time, and should have been discovered and remedied before PLAINTIFF came into contact with it and suffered severe injuries.

31. Moreover, CARNIVAL knew or should have known that having a staircase that had deteriorated over time would cause the staircase step to develop a raised nosing and an exposed gap/lip where the carpet meets the nosing of the staircase thereby becoming a tripping hazard, thus creating a hazard that was not open and obvious to passengers, but was well-known to CARNIVAL.

32. The subject stairway nosing was badly worn and had become raised and warped, causing the otherwise flush step edge to have a protrusion that constituted a tripping and slipping hazard, as it could easily catch the front of a passenger's shoe and destabilize them while descending.

33. The worn and warped condition of the stairway nosing appeared not to be a new or sudden defect, but rather a condition that had developed gradually over time as a result of repeated wear, pedestrian traffic, and inadequate maintenance.

34. Given the length of time required for stairway nosings to become worn, raised,

5

and warped, CARNIVAL, in the exercise of reasonable care, had sufficient opportunity to inspect, repair, or replace the defective nosing. Accordingly, CARNIVAL is deemed to have had constructive knowledge of this hazardous condition.

35. At all relevant times, CARNIVAL was under a legal duty to comply with the National Fire Protection Association (NFPA) Standard NFPA-301, titled "Code for Safety to Life from Fire on Merchant Vessels," which is a safety standard that provides, in relevant part: "**Stair treads shall be uniformly slip-resistant and shall be free of projections or lips that could trip stair users**." NFPA 301, Code for Safety to Life from Fire on Merchant Vessels. ¶ 5-2.2.3.4 (1998).

36. At all relevant times, CARNIVAL was under a legal duty to comply with mandatory international vessel safety regulations that are promulgated by the International Maritime Organization (IMO) under authority to expressly confer by the U.S. Senate-ratified international Safety of Life at Sea (SOLAS) treaty. For example, the International Maritime Organization, SOLAS, Part C, Regulation 13 ("Means of Escape"), provides at Section 1.2 "**escape routes shall be maintained in a safe condition, clear of obstacles**"; and at Section G4.5 "**Nosings on [stair] treads should be kept to minimum dimensions in order to reduce the risk of passengers tripping over them and should be the same sectional shape on all treads of a stairway**."

37. At all relevant times, CARNIVAL was under a legal duty to comply with industry safety standards that are promulgated by the International Maritime Organization (IMO), the U.S. Coast Guard, the U.S. Access Board, and the American Society for Testing and Materials (ASTM) International. For example, the ASTM-F1166-07, titled "Standard Practice for Human Engineering Design for

10800 Biscayne Blvd · Suite 700 · Miami, FL 33161 · Tel: (305) 579-0008 · Fax: (305) 563-7055
www.danielcourtneylaw.com · dc@danielcourtneylaw.com

Maritime Systems, Equipment, and Facilities," provides, in relevant part: "**The top tread shall be flush with the walking surface to which the stair is attached**."  ASTM Standard ASTM-F1166-07, ¶ 11.2.5 (2013 ed.).

38. Prior to PLAINTIFF's incident, CARNIVAL had actual and/or constructive knowledge of the dangerous condition by, among other things:

   a. The length of time the dangerous condition existed;

   b. Multiple steps on the same stairway had this dangerous condition;

   c. The nature of the dangerous condition – including that the condition (raised and protruding nosing of the staircase) was unreasonably dangerous and in violation of industry standards, guidelines, regulations, and codes, and was apparent to any of CARNIVAL's personnel cleaning, inspecting, and/or maintaining the staircase, but not readily apparent to PLAINTIFF;

   d. Prior similar incidents reported on the subject cruise ship or other CARNIVAL vessels over the years;

   e. The fact that the nosing on the stairs, when traversed by crew and passengers over time can become raised and must therefore be inspected regularly to ensure ongoing and safe performance; and/or

   f. The fact that the dangerous condition, a similar dangerous condition, or the cause of the dangerous condition was repetitive, continuous, ongoing, recurring, or occurring with some regularity.

39. Furthermore, CARNIVAL was on notice of the dangerous condition(s) causing PLAINTIFF's incident and did not correct them.  CARNIVAL's knowledge of the dangerous condition(s) was specifically acquired through prior incidents causing personal injury to CARNIVAL's passengers in the same or substantially similar

10800 Biscayne Blvd · Suite 700 · Miami, FL 33161 · Tel: (305) 579-0008 · Fax: (305) 563-7055
www.danielcourtneylaw.com · dc@danielcourtneylaw.com

manner.  See *Dove v. Carnival Corporation,* Case No: 1:24-cv-24552 (passenger tripped over raised nosing while descending on an interior staircase); *Lambert v. Carnival Corporation,* Case No: 1:20-cv-24554 (passenger tripped over defective stair nosing while descending on an interior staircase); and *Ramirez v. Carnival Corporation,* Case No: 1:22-cv-21202 (passenger tripped over raised nosing while descending on an interior staircase).  These are only three (3) of a multitude of instances in which CARNIVAL had been placed on notice of the propensity of the nosing of interior staircases to deteriorate and pose a significant risk to traversing passengers.

40. In the alternative, CARNIVAL created the dangerous condition through its active negligence, and thus, notice is not required.

41. CARNIVAL directly participated in and approved of the designs for the interior areas of the subject vessel, including the selection of flooring materials for the stairs in public areas onboard the ship.

42. CARNIVAL established internal standards for the use and selection of flooring materials for various areas aboard its ships, including the subject vessel.  Upon information and belief, these internal standards were created and/or approved of by CARNIVAL.

43. At all material times, CARNIVAL knew or should have known that the interior stairway where Plaintiff slipped and fell was a heavily trafficked area frequently used by passengers to travel between decks, and that its proximity to dining, entertainment, and gathering areas made it subject to increased foot traffic and risk of wear, spillage, and hazardous conditions.  CARNIVAL further knew that passengers often traversed the stairway while wet from nearby pools and recreational deck activities, thereby increasing the likelihood of water

10800 Biscayne Blvd · Suite 700 · Miami, FL 33161 · Tel: (305) 579-0008 · Fax: (305) 563-7055
www.danielcourtneylaw.com · dc@danielcourtneylaw.com

accumulation and creating an even greater risk of slips, trips, and falls, similar to stairways in other comparable locations aboard CARNIVAL vessels.

44. PLAINTIFF has complied with all conditions precedent to the filing of this lawsuit.

45. As a direct and proximate result of CARNIVAL's negligence, PLAINTIFF sustained bodily injuries, resulting pain and suffering, disability, mental anguish, loss of enjoyment of life, medical expenses, lost wages, loss of future earning capacity, and other damages which are either permanent or continuing in nature.

## COUNT I – NEGLIGENT FAILURE TO MAINTAIN
### (Direct Liability)

*PLAINTIFF re-alleges paragraphs 1 through 45 as if fully set forth herein.*

46. CARNIVAL owed PLAINTIFF a duty to exercise reasonable care under the circumstances for the safety of its passengers, including maintaining its premises in a reasonably safe condition.

47. CARNIVAL breached its duty by failing to maintain the subject stairway in a safe condition, allowing the anti-slip rubber strip on the top step nosing to become and to remain raised and not flush with the remainder of the nosing.

 

9

48. CARNIVAL either knew or should have known of the defective condition through the exercise of reasonable care, including regular inspections.

49. At all material times, CARNIVAL had actual and/or constructive notice of the dangerous condition on the subject stairway because it was located in a high-traffic area used daily by large numbers of passengers; because of prior similar incidents involving raised stair-nosings and liquid accumulation on stairs aboard CARNIVAL vessels; because the raised, worn, and warped nosing was visible and had developed gradually over time through wear and inadequate maintenance; and because liquid on the stairway was not confined to a single small spot but was spread across a portion of the step so as to suggest it had been present long enough to invite corrective measures; demonstrating that CARNIVAL had actual and/or constructive notice of the hazardous stair condition that caused Plaintiff's fall.

50. The defective nosing that caused PLAINTIFF's fall existed for an unreasonable period of time prior to the incident.

51. Prior to the subject incident, CARNIVAL had actual and/or constructive notice of the dangerous condition that existed on the stairway where Plaintiff slipped and fell, to wit: a raised, worn, and warped stair nosing and the presence of liquid on or near the stair surface, from similar prior incidents of passengers slipping and falling on CARNIVAL ships due to defective or hazardous stair conditions including, but not limited to, the following slip and falls on CARNIVAL vessels: *Dove v. Carnival Corporation,* Case No: 1:24-cv-24552 (passenger tripped over raised nosing while descending on an interior staircase); *Lambert v. Carnival Corporation,* Case No: 1:20-cv-24554 (passenger tripped over defective stair nosing while descending on an interior staircase); and *Ramirez v. Carnival*

10800 Biscayne Blvd · Suite 700 · Miami, FL 33161 · Tel: (305) 579-0008 · Fax: (305) 563-7055
www.danielcourtneylaw.com · dc@danielcourtneylaw.com

*Corporation,* Case No: 1:22-cv-21202 (passenger tripped over raised nosing while descending on an interior staircase).  These are only three (3) of a multitude of instances in which CARNIVAL had been placed on notice of the propensity of the nosing of interior staircases to deteriorate and pose a significant risk to traversing passengers.

52. At all material times, CARNIVAL owed PLAINTIFF, as a fare paying passenger, a duty of reasonable care for her safety, including a duty to maintain its vessel, including the floor surface in the area where Plaintiff slipped and fell, in a reasonably safe condition.

53. On June 12, 2024, CARNIVAL breached its duty to PLAINTIFF by failing to take reasonable safety measures to maintain the floor surface, including the area where PLAINTIFF slipped and fell, in a reasonably safe condition and was thereby negligent, in one or more of the following ways:

   a.  Failing to maintain the floor surface in the area where PLAINTIFF slipped and fell in a reasonably safe condition so as to prevent slip and fall hazards.

   b.  Failing to use a floor surface in the area where PLAINTIFF fell to ensure it has adequate slip resistance to prevent slip and falls from occurring.

   c.  Failing to utilize stair-nosings that have adequate slip resistance.

   d.  Failing to inspect, clean, and/or maintain the floor surface where Plaintiff slipped, in a dry condition.

   e.  Failing to prevent wet, slippery, transitory, or foreign substances from accumulating in high traffic areas, including the subject staircase where Plaintiff slipped and fell.

   f.  Failing to conduct frequent, timely, or adequate inspections of the subject

11

staircase, to identify or detect potential slip and fall hazards such as the raised, worn, and warped stair nosing and the presence of liquid on or near the stair surface area where Plaintiff fell.

g. Failing in a timely manner to remove, cordon off or otherwise ameliorate the floor hazard posed by the raised, worn, and warped stair nosing and the presence of liquid on or near the stair surface, prior to Plaintiff's slip and fall.

h. Failing to implement and enforce adequate policies and procedures to ensure that the floor of the subject staircase was safe, so as to prevent slips and falls from occurring.

i. Failing to staff and deploy a sufficient number of personnel to implement and enforce adequate policies and procedures to ensure that the floor surface on the subject staircase, so as to prevent slip and falls from occurring.

j. Failing to employ sufficient crewmembers or adequately train its crew to maintain the surface where Plaintiff slipped, and the adjacent areas, free of slip and fall hazards.

54. As a direct and proximate result of CARNIVAL's negligence, PLAINTIFF sustained bodily injuries, resulting pain and suffering, disability, mental anguish, loss of enjoyment of life, medical expenses, and other damages which are either permanent or continuing in nature.

WHEREFORE, PLAINTIFF demands judgment for damages against the Defendant together with costs of this action, prejudgment interest, and any other relief deemed just and appropriate by this Honorable Court.  Furthermore, PLAINTIFF demands trial by jury of all matters so triable as a matter of right.

10800 Biscayne Blvd · Suite 700 · Miami, FL 33161 · Tel: (305) 579-0008 · Fax: (305) 563-7055
www.danielcourtneylaw.com · dc@danielcourtneylaw.com

## COUNT II - NEGLIGENT FAILURE TO CORRECT
### (Direct liability)

*PLAINTIFF re-alleges paragraphs 1 through 45 as if fully set forth herein.*

55. At all material times, CARNIVAL owed Plaintiff, as a fare paying passenger, a duty of reasonable care for her safety, including a duty to correct dangerous conditions of which it knew or should have known about in the exercise of reasonable care.

56. At all material times a dangerous condition existed on the floor referenced above, to-wit: a raised, worn, and warped stair nosing and the presence of liquid on or near the stair surface.

57. At all material times, CARNIVAL had actual and/or constructive notice of the dangerous condition on the subject stairway because it was located in a high-traffic area used daily by large numbers of passengers; because of prior similar incidents involving raised stair nosings and liquid accumulation on stairs aboard CARNIVAL vessels; because the raised, worn, and warped nosing was visible and had developed gradually over time through wear and inadequate maintenance; and because liquid on the stairway was not confined to a single small spot but was spread across a portion of the step so as to suggest it had been present long enough to invite corrective measures; demonstrating that CARNIVAL had actual and/or constructive notice of the hazardous stair condition that caused Plaintiff's fall.

58. The defective nosing that caused PLAINTIFF's fall existed for an unreasonable period of time prior to the incident.

59. Prior to the subject incident, CARNIVAL had actual and/or constructive notice of the dangerous condition that existed on the stairway where Plaintiff slipped and fell, to wit: a raised, worn, and warped stair nosing and the presence of liquid on or near the stair surface, from similar prior incidents of passengers slipping and

10800 Biscayne Blvd · Suite 700 · Miami, FL 33161 · Tel: (305) 579-0008 · Fax: (305) 563-7055
www.danielcourtneylaw.com · dc@danielcourtneylaw.com

falling on CARNIVAL ships due to defective or hazardous stair conditions including, but not limited to, the following slip and falls on CARNIVAL vessels: *Dove v. Carnival Corporation,* Case No: 1:24-cv-24552 (passenger tripped over raised nosing while descending on an interior staircase); *Lambert v. Carnival Corporation,* Case No: 1:20-cv-24554 (passenger tripped over defective stair nosing while descending on an interior staircase); and *Ramirez v. Carnival Corporation,* Case No: 1:22-cv-21202 (passenger tripped over raised nosing while descending on an interior staircase).  These are only three (3) of a multitude of instances in which CARNIVAL had been placed on notice of the propensity of the nosing of interior staircases to deteriorate and pose a significant risk to traversing passengers.

60. Alternatively, CARNIVAL had actual and/or constructive notice of the dangerous condition that existed on the floor surface where Plaintiff slipped and fell via its inspection schedule and cleaning policies for the area in question by its crewmembers; the recurring nature of the condition; the high traffic nature of the area where Plaintiff slipped and fell; or otherwise.

61. On June 12, 2024, CARNIVAL breached its duty to PLAINTIFF by failing to take reasonable safety measures to maintain the floor surface, including the area where PLAINTIFF slipped and fell, in a reasonably safe condition and was thereby negligent, in one or more of the following ways:

    a. Failing to maintain the floor surface in the area where PLAINTIFF slipped and fell in a reasonably safe condition so as to prevent slip and fall hazards.

    b. Failing to use a floor surface in the area where PLAINTIFF fell to ensure it has adequate slip resistance to prevent slip and falls from occurring.

10800 Biscayne Blvd · Suite 700 · Miami, FL 33161 · Tel: (305) 579-0008 · Fax: (305) 563-7055
www.danielcourtneylaw.com · dc@danielcourtneylaw.com

c.  Failing to utilize stair-nosings that have adequate slip resistance.

d.  Failing to inspect, clean, and/or maintain the floor surface where Plaintiff slipped, in a dry condition.

e.  Failing to prevent wet, slippery, transitory, or foreign substances from accumulating in high traffic areas, including the subject staircase where Plaintiff slipped and fell.

f.  Failing to conduct frequent, timely, or adequate inspections of the subject staircase, to identify or detect potential slip and fall hazards such as the raised, worn, and warped stair nosing and the presence of liquid on or near the stair surface area where Plaintiff fell.

g.  Failing in a timely manner to remove, cordon off or otherwise ameliorate the floor hazard posed by the raised, worn, and warped stair nosing and the presence of liquid on or near the stair surface, prior to Plaintiff's slip and fall.

h.  Failing to implement and enforce adequate policies and procedures to ensure that the floor of the subject staircase was safe, so as to prevent slips and falls from occurring.

i.  Failing to staff and deploy a sufficient number of personnel to implement and enforce adequate policies and procedures to ensure that the floor surface on the subject staircase, so as to prevent slip and falls from occurring.

j.  Failing to employ sufficient crewmembers or adequately train its crew to maintain the surface where Plaintiff slipped, and the adjacent areas, free of slip and fall hazards.

62. As a direct and proximate result of the negligence of Defendant, CARNIVAL,

15

10800 Biscayne Blvd · Suite 700 · Miami, FL 33161 · Tel: (305) 579-0008 · Fax: (305) 563-7055
www.danielcourtneylaw.com · dc@danielcourtneylaw.com

PLAINTIFF suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, past lost wages, loss of future earning capacity, and expense of hospitalization, and medical and nursing care and treatment.  The losses are either permanent or continuing in nature and PLAINTIFF will continue to suffer the losses in the future.

WHEREFORE, PLAINTIFF demands judgment for damages against the Defendant together with costs of this action, prejudgment interest, and any other relief deemed just and appropriate by this Honorable Court.  Furthermore, PLAINTIFF demands trial by jury of all matters so triable as a matter of right.

## COUNT III – NEGLIGENT FAILURE TO WARN
### (Direct Liability)

*PLAINTIFF hereby re-alleges paragraphs 1 through 45 as if fully set forth herein.*

63. CARNIVAL owed PLAINTIFF a duty to warn of dangers it knew or should have known about and that were not open and obvious to a reasonable passenger.

64. The condition constituted a latent hazard not readily apparent to passengers descending the stairs.

65. CARNIVAL failed to warn passengers, including PLAINTIFF, of the dangerous condition presented by the condition.

66. At the time of the incident, there were no signs, barriers, or warnings posted regarding the hazardous condition.

67. At all material times, CARNIVAL had actual and/or constructive notice of the dangerous condition on the subject stairway because it was located in a high-traffic area used daily by large numbers of passengers; because of prior similar incidents involving raised stair-nosings and liquid accumulation on stairs aboard CARNIVAL vessels; because the raised, worn, and warped nosing was visible and

16

had developed gradually over time through wear and inadequate maintenance; and because liquid on the stairway was not confined to a single small spot but was spread across a portion of the step so as to suggest it had been present long enough to invite corrective measures; demonstrating that CARNIVAL had actual and/or constructive notice of the hazardous stair condition that caused Plaintiff's fall.

68. The defective nosing that caused PLAINTIFF's fall existed for an unreasonable period of time prior to the incident.

69. Prior to the subject incident, CARNIVAL had actual and/or constructive notice of the dangerous condition that existed on the stairway where Plaintiff slipped and fell, to wit: a raised, worn, and warped stair nosing and the presence of liquid on or near the stair surface, from similar prior incidents of passengers slipping and falling on CARNIVAL ships due to defective or hazardous stair conditions including, but not limited to, the following slip and falls on CARNIVAL vessels: *Dove v. Carnival Corporation,* Case No: 1:24-cv-24552 (passenger tripped over raised nosing while descending on an interior staircase); *Lambert v. Carnival Corporation,* Case No: 1:20-cv-24554 (passenger tripped over defective stair nosing while descending on an interior staircase); and *Ramirez v. Carnival Corporation,* Case No: 1:22-cv-21202 (passenger tripped over raised nosing while descending on an interior staircase).  These are only three (3) of a multitude of instances in which CARNIVAL had been placed on notice of the propensity of the nosing of interior staircases to deteriorate and pose a significant risk to traversing passengers.

70. Alternatively, CARNIVAL had actual and/or constructive notice of the dangerous condition that existed on the floor surface where Plaintiff slipped and fell via its

10800 Biscayne Blvd · Suite 700 · Miami, FL 33161 · Tel: (305) 579-0008 · Fax: (305) 563-7055
www.danielcourtneylaw.com · dc@danielcourtneylaw.com

inspection schedule and cleaning policies for the area in question by its crewmembers; the recurring nature of the condition; the high traffic nature of the area where Plaintiff slipped and fell; or otherwise.

71. CARNIVAL had superior knowledge of the hazard, particularly given that there have been so many substantially similar prior incidents, and CARNIVAL's employees are trained to look daily for any hazards that need to be remedied.

72. CARNIVAL was aware of the propensity for this incident to occur due to an extensive list of past lawsuits and injuries directly related to negligent conditions existing on the nosing of interior staircases.

73. Notwithstanding its actual or constructive knowledge of the dangerous condition as alleged above, CARNIVAL at all material times failed to warn passengers, including the Plaintiff, of the hazardous condition before the Plaintiff slipped and fell.

74. At all times material, CARNIVAL breached its duty to Plaintiff by failing to take reasonable safety measures to maintain the floor surface, including the area where Plaintiff slipped and fell, in a reasonably safe condition and was thereby negligent, in one or more of the following ways:

   a. Failing to warn of the dangerous condition through written or orally delivered warnings.

   b. Failing to place appropriate signage, markings, and/or placement of cones near the dangerous condition.

   c. Failing to cordon off the dangerous area pending its cleaning and drying, replacing, repairing, or otherwise.

75. As a direct and proximate result of CARNIVAL's failure to warn, PLAINTIFF sustained bodily injuries, resulting pain and suffering, disability, mental

18

anguish, loss of enjoyment of life, medical expenses, and other damages which are either permanent or continuing in nature.

WHEREFORE, PLAINTIFF demands judgment for damages against the Defendant together with costs of this action, prejudgment interest, and any other relief deemed just and appropriate by this Honorable Court.  Furthermore, PLAINTIFF demands trial by jury of all matters so triable as a matter of right.

## COUNT IV – NEGLIGENT TRAINING PERSONNEL
### (Direct Liability)

*PLAINTIFF hereby re-alleges paragraphs 1 through 45 as if fully set forth herein.*

76. CARNIVAL owed a duty to exercise reasonable care for the safety of their passengers.  CARNIVAL owes a duty as a common carrier to its passengers to train its crew members to properly inspect, maintain, fix, and warn of dangers known to CARNIVAL where CARNIVAL invites or reasonably expects passengers to go.  CARNIVAL's duty of care includes training its crew members to inspect, maintain, fix, and warn passengers about dangerous conditions on board the *Carnival Venezia* including where PLAINTIFF was caused to fall.

77. CARNIVAL had actual notice and/or constructive notice of the dangerous condition as alleged above.

78. CARNIVAL had notice of the dangerous condition as evidenced by CARNIVAL having policies and procedures, and a program, applicable to the subject area.

79. CARNIVAL provides and trains crew members tasked with inspection, cleaning and/or maintenance of its stairways, and to warn passengers that its stairways may be uneven and/or slippery.

80. CARNIVAL's training programs are within the company's training manuals (SMS Protocols) as well as two-minute trainers, videos and presentations.  These materials are generated, prepared, reviewed, and/or otherwise controlled by

19

CARNIVAL.

81. Prior to the subject incident, CARNIVAL implemented a program that was known as the "Own Your Own Spill Program."

82. Said Program included liquid spills and included hazards that prevented the flooring, including step-nosings, from laying flat.

83. There were many aspects of the program that if properly operated would have prevented the subject incident.

84. Part of the program was that workers, including housekeeping stewards, needed to be involved and committed to reducing risks.

85. These stewards had an obligation to spot hazards, report them to supervisors, place warning cones, and/or provide verbal warnings in the areas with uneven and/or slippery floorings, until the hazards were fixed.

86. CARNIVAL's training and procedures instruct crew members that its stairways, including the nosings that can be uneven and/or slippery, can cause passengers to slip and/or trip and fall and stumble and/or lose balance and fall and get injured.

87. CARNIVAL created this procedure for its crew because CARNIVAL knew that without verbal, written, and/or visual warnings or cues passengers may not be able to appreciate the hazards of its stairways.

88. CARNIVAL also knows that the hazards of its stairways are not open and obvious to its passengers which shows that CARNIVAL knew or should have known that the dangerous condition in this case was not an open and obvious condition.

89. At the time of the subject incident there were numerous portions of the subject stairway that were raised, worn, and warped along different stair-nosings that confirmed that crewmembers, including housekeeping stewards, were not

20

operating the program properly.

90. CARNIVAL should have become aware that it had failed to properly train its crew members given that the crew member(s) failed to inspect, fix, maintain, and warn of the dangerous condition(s) that existed on the subject staircase.

91. CARNIVAL should have become aware that it had failed to properly train its crew members given that crew members who traversed the subject interior staircase failed to properly identify the dangerous condition(s) that existed on the subject staircase prior to PLAINTIFF's incident.

92. CARNIVAL should have become aware that it had failed to properly train its crew members given that the crew members were failing to properly warn passengers of the dangerous conditions that existed on the subject staircase.

93. CARNIVAL breached its duty of care owed to PLAINTIFF and was negligent by failing to reasonably train its crew members to inspect, fix, maintain, and warn passengers of the dangerous conditions onboard the *Carnival Venezia*, especially on interior staircases with defective conditions.

94. CARNIVAL failed to comply with industry standards regarding how to train its crew members to inspect and maintain the flooring and warn passengers of dangerous conditions that exist on the flooring, especially in areas of ingress or egress like the subject stairway.

95. CARNIVAL was negligent in the implementation or operation of its training program and said negligence caused PLAINTIFF's damages.

96. At the time PLAINTIFF fell on the subject interior staircase, the crew member(s) that was/were responsible for identifying the condition failed to do so.

97. Alternatively, the crew member(s) told to fix the condition failed to do so.

98. Because that/those crew member(s) was/were not properly trained, said crew

21

member failed to properly and adequately warn passengers, like PLAINTIFF, of the dangerous conditions on board the *Carnival Venezia,* including the subject interior staircase, that crew member also failed to properly inspect, maintain, and fix the defective area.

99. Alternatively, CARNIVAL never trained their crew to identify hazards such as the condition.

100. Alternatively, CARNIVAL never trained their crew to warn passengers once a dangerous condition has been identified.

101. CARNIVAL breached its duty by failing to teach shipboard crew: how to inspect and maintain the stairways used by guests to get to and from one deck to another; how frequently to inspect and maintain the stairways used by guests to get to and from one deck to another; how to test, check and/or otherwise determine whether crew understand how to inspect and maintain stairways used by guests to get to and from one deck to another; to warn passengers of worn, raised and/or warped nosings on stairways and the dangerous of the worn, raised and/or warped nosings on stairways used by guests to get to and from one deck to another; how to reasonably mark, cordon off and/or provide visual cues to alert guests that stairways used by guests might contain nosings that might be be worn, raised and/or warped; how to test, check and/or otherwise determine whether crew understand CARNIVAL's fall prevention program; how frequently crew should be trained to ensure they understand, remember and retain information from training programs regarding fall prevention; to comply with industry standards regarding how to train its crew members to inspect and maintain worn, raised and/or warped nosings on stairways; to assign sufficient crew to implement and operate its inspection, maintenance, warning and/or fall

22

10800 Biscayne Blvd · Suite 700 · Miami, FL 33161 · Tel: (305) 579-0008 · Fax: (305) 563-7055
www.danielcourtneylaw.com · dc@danielcourtneylaw.com

prevention programs.

102.     CARNIVAL's failure to properly train its crew members proximately caused PLAINTIFF's injuries.   Had CARNIVAL properly trained its crew members to inspect, maintain, fix, and/or warn passengers about the dangerous conditions onboard the *Carnival Venezia*, including the subject staircase where PLAINTIFF was caused to fall, a crew member would have inspected, maintained, fixed, and/or warned PLAINTIFF about the dangerous condition.   Had CARNIVAL properly trained its crew members, the dangerous condition would not have existed.   Had CARNIVAL properly trained its crew members, PLAINTIFF would have been aware of the dangerous condition and this incident would never have occurred.

103.     As a direct and proximate result of CARNIVAL's negligent training of its personnel, via implementation and/or operation of their training manuals (SMS Protocols) as well as two-minute trainers, videos, and presentations, and the "Own Your Own Spill Program", PLAINTIFF sustained bodily injuries, resulting pain and suffering, disability, mental anguish, loss of enjoyment of life, medical expenses, and other damages which are either permanent or continuing in nature.

WHEREFORE, PLAINTIFF demands judgment for damages against the Defendant together with costs of this action, prejudgment interest, and any other relief deemed just and appropriate by this Honorable Court.   Furthermore, PLAINTIFF demands trial by jury of all matters so triable as a matter of right.

## COUNT V - NEGLIGENT MAINTENANCE
### (Vicarious Liability)

*PLAINTIFF hereby re-alleges paragraphs 1 through 45 as if fully set forth herein.*

104.     At all material times, CARNIVAL owed Plaintiff, as a fare paying passenger,

23

10800 Biscayne Blvd · Suite 700 · Miami, FL 33161 · Tel: (305) 579-0008 · Fax: (305) 563-7055
www.danielcourtneylaw.com · dc@danielcourtneylaw.com

a duty of reasonable care for her safety, including a duty to maintain its vessel, including the floor surface in the area where Plaintiff was caused to fall, in a reasonably safe condition.

105.    At all material times, CARNIVAL was vicariously liable for the negligent acts and/or omissions of its crewmembers, agents, representatives, employees, and/or staff, who were acting in furtherance of the business of CARNIVAL'S vessel.

106.    At all material times, CARNIVAL's crewmember, agent, staff and/or employee was drying, cleaning and/or mopping the floor surface where Plaintiff slipped and fell as described above, creating a dangerous condition for passengers, including the Plaintiff.

107.    At all material times, CARNIVAL's crewmember, agent, employee, and/or staff, breached its duty owed to Plaintiff and was negligent in one or more of the following ways:

   a. Failing to clean and/or mop and/or dry the floor surface in a manner that would not create a dangerous condition for passengers, including Plaintiff.

   b. Failing to inspect and correct the condition of the floor surface in the area where Plaintiff slipped and fell so as to prevent slip and fall hazards.

   c. Failing to cordon off the area of the floor surface in the area of Deck 10 where Plaintiff slipped and fell to prevent slip and falls from occurring.

   d. Failing to identify or detect potential slip and fall hazards such as the wet, slippery, transitory, or foreign substance on the floor where Plaintiff slipped and fell.

   e. Failing to identify or detect potential fall hazards such as the raised, worn, and warped stair nosing on the floor where Plaintiff slipped and fell.

24

10800 Biscayne Blvd · Suite 700 · Miami, FL 33161 · Tel: (305) 579-0008 · Fax: (305) 563-7055
www.danielcourtneylaw.com · dc@danielcourtneylaw.com

f. Failing to place a caution sign or other warning sign or provide other warnings in the area of Deck 10 where Plaintiff slipped and fell to prevent slip and falls from occurring.

108. The negligent acts and/or omissions of CARNIVAL's crewmember, agent, employee, and/or staff, as alleged in the preceding paragraph occurred while the crewmember, agent, employee, and/or staff was/were engaged in furtherance of his duties and responsibilities as a member of the vessels crew and on behalf and in furtherance of the business of CARNIVAL and its' vessel.

109. As a direct and proximate result of the negligence of Defendant, CARNIVAL, PLAINTIFF suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, past lost wages, loss of future earning capacity, and expense of hospitalization, and medical and nursing care and treatment. The losses are either permanent or continuing in nature and PLAINTIFF will continue to suffer the losses in the future.

WHEREFORE, PLAINTIFF demands judgment for damages against the Defendant together with costs of this action, prejudgment interest, and any other relief deemed just and appropriate by this Honorable Court. Furthermore, PLAINTIFF demands trial by jury of all matters so triable as a matter of right.

### COUNT VI - NEGLIGENT FAILURE TO WARN OF HAZARD
### (Vicarious Liability)

*PLAINTIFF hereby re-alleges paragraphs 1 through 45 as if fully set forth herein.*

110. At all material times, CARNIVAL owed the Plaintiff, as a fare paying passenger, a duty to warn passengers of hazards of which it knew or should have known in the exercise of reasonable care its passengers may reasonably be expected to encounter on the vessel.

10800 Biscayne Blvd · Suite 700 · Miami, FL 33161 · Tel: (305) 579-0008 · Fax: (305) 563-7055
www.danielcourtneylaw.com · dc@danielcourtneylaw.com

111. At all material times, CARNIVAL was vicariously liable for the negligent acts and/or omissions of its crewmembers, agents, representatives, employees, and/or staff, who were acting in furtherance of the business of CARNIVAL's vessel.

112. At all material times, CARNIVAL's crewmember, agent, employee and/or staff was/were drying, cleaning and/or mopping the floor surface where Plaintiff slipped and fell as described above, creating a dangerous condition for passengers, including the Plaintiff.

113. At all material times, CARNIVAL's crewmember, agent, employee, and/or staff, breached the duty owed to Plaintiff and was negligent in one or more of the following ways:

   a. Failing to warn of the dangerous condition through written or orally delivered warnings.

   b. Failing to place appropriate signage, markings, and/or placement of cones near the dangerous condition.

   c. Failing to cordon off the dangerous area pending its cleaning and drying, replacing, repairing, or otherwise.

114. The negligent acts and/or omissions of CARNIVAL's crewmember, agent, employee, and/or staff, as alleged in the preceding paragraph occurred while the crewmember, agent, employee, and/or staff was engaged in furtherance of the business of CARNIVAL and its' vessel.

115. As a direct and proximate result of the negligence of Defendant, CARNIVAL, PLAINTIFF suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, past lost wages, loss of future earning capacity, and expense of

26

hospitalization, and medical and nursing care and treatment. The losses are either permanent or continuing in nature and PLAINTIFF will continue to suffer the losses in the future.

WHEREFORE, PLAINTIFF demands judgment for damages against the Defendant together with costs of this action, prejudgment interest, and any other relief deemed just and appropriate by this Honorable Court. Furthermore, PLAINTIFF demands trial by jury of all matters so triable as a matter of right.

## COUNT VII - NEGLIGENT FAILURE TO CORRECT
### (Vicarious Liability)

*PLAINTIFF hereby re-alleges paragraphs 1 through 45 as if fully set forth herein.*

116. At all material times, CARNIVAL owed the Plaintiff, as a fare paying passenger, a duty to warn passengers of hazards of which it knew or should have known in the exercise of reasonable care its passengers may reasonably be expected to encounter on the vessel.

117. At all material times, CARNIVAL was vicariously liable for the negligent acts and/or omissions of its crewmembers, agents, representatives, employees, and/or staff, who were acting in furtherance of the business of CARNIVAL's vessel.

118. At all material times, CARNIVAL's crewmember, agent, staff and/or employee was drying, cleaning and/or mopping the floor surface where Plaintiff slipped and fell as described above, creating a dangerous condition for passengers, including the Plaintiff.

119. At all material times, CARNIVAL's crewmember, agent, employee, and/or staff, breached its duty owed to Plaintiff and was negligent in one or more of the following ways:

    a. Failing to inspect, clean, and/or maintain the floor surface where Plaintiff

27

slipped, in a dry condition.

b. Failing to prevent wet, slippery, transitory, or foreign substances from accumulating in high traffic areas, including the subject staircase where Plaintiff slipped and fell.

c. Failing to conduct frequent, timely, or adequate inspections of the subject staircase, to identify or detect potential slip and fall hazards such as the raised, worn, and warped stair nosing and the presence of liquid on or near the stair surface area where Plaintiff fell.

d. Failing in a timely manner to remove, cordon off or otherwise ameliorate the floor hazard posed by the raised, worn, and warped stair nosing and the presence of liquid on or near the stair surface, prior to Plaintiff's slip and fall.

120.    The negligent acts and/or omissions of CARNIVAL's crewmember, agent, employee, and/or staff, as alleged in the preceding paragraph occurred while the crewmember, agent, employee, and/or staff was engaged in furtherance of the business of CARNIVAL and its vessel.

121.    As a direct and proximate result of the negligence of Defendant, CARNIVAL, PLAINTIFF suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, past lost wages, loss of future earning capacity, and expense of hospitalization, and medical and nursing care and treatment.  The losses are either permanent or continuing in nature and PLAINTIFF will continue to suffer the losses in the future.

WHEREFORE, PLAINTIFF demands judgment for damages against the Defendant together with costs of this action, prejudgment interest, and any other relief deemed just

10800 Biscayne Blvd · Suite 700 · Miami, FL 33161 · Tel: (305) 579-0008 · Fax: (305) 563-7055
www.danielcourtneylaw.com · dc@danielcourtneylaw.com

and appropriate by this Honorable Court. Furthermore, PLAINTIFF demands trial by jury of all matters so triable as a matter of right.

### COUNT VIII - NEGLIGENT DESIGN
### (Direct Liability)

*PLAINTIFF hereby re-alleges paragraphs 1 through 46 as if fully set forth herein.*

122. At all material times, CARNIVAL owed the PLAINTIFF, as a fare-paying passenger, a duty to exercise reasonable care under the circumstances for her safety, including the duty to design, select, and/or approve stairway components that were reasonably safe for passengers to use and free of hidden tripping hazards.

123. In 2015, CARNIVAL, through its subsidiary Carnival Cruise Line, entered into a design and construction agreement with Fincantieri to build a new class of vessels, including the *Costa Venezia*, to CARNIVAL's specifications, whereby CARNIVAL demonstrated control over design, materials, and ability to alter ship specifications pre-delivery.

104. Prior to CARNIVAL ordering the subject vessel from the shipbuilder, CARNIVAL had actual and/or constructive notice of the dangerous condition that existed on the stairway where Plaintiff slipped and fell, to wit: a raised, worn, and warped stair nosing and the presence of liquid on or near the stair surface, from similar prior incidents of passengers slipping and falling on CARNIVAL ships due to defective or hazardous stair conditions including, but not limited to, the following slip and falls on CARNIVAL vessels: *Holderbaum v. Carnival Corporation,* Case No: 1:13-cv-24216 (passenger tripped over raised nosing while descending on an interior staircase); *Williams v. Carnival Corporation,* Case No: 1:13-cv-24686 (passenger tripped over defective stair nosing while descending on an interior staircase); and *Bolender v. Carnival Corporation,* Case No: 1:13-cv-24215

10800 Biscayne Blvd · Suite 700 · Miami, FL 33161 · Tel: (305) 579-0008 · Fax: (305) 563-7055
www.danielcourtneylaw.com · dc@danielcourtneylaw.com

(passenger slipped over raised nosing while ascending on an interior staircase). These are only three (3) of a multitude of instances in which CARNIVAL had been placed on notice of the propensity of the nosing of interior staircases to pose a significant risk to traversing passengers.

124.     *Costa Venezia* was launched in 2019 for CARNIVAL's sister brand Costa Cruises, but in 2023, CARNIVAL reassigned and refit the ship into the *Carnival Venezia*, demonstrating CARNIVAL's control over design, materials, and ability to alter ship specifications post-delivery.  There were countless incidents prior to reassignment that put CARNIVAL on notice of the dangerousness of the subject nosings.

125.     CARNIVAL breached its duty of care by negligently designing and/or selecting the subject stairway nosing with a rubber anti-slip strip embedded between metal, a design feature with a known propensity to separate from the carpet and become raised after ordinary passenger use and maintenance, thereby creating a hidden tripping hazard.

126.     The design of the nosing on the subject stairway was unreasonably dangerous because, when the strip separated, it created a raised lip and gap not open and obvious to passengers but known to CARNIVAL to pose a high risk of tripping.

127.     The design of the subject stairway nosing violated applicable safety standards, including but not limited to:

   a. National Fire Protection Association (NFPA) Standard NFPA-301, requiring stair treads to be "uniformly slip-resistant and free of projections or lips that could trip stair users";

   b. International Maritime Organization (IMO) SOLAS regulations requiring

10800 Biscayne Blvd · Suite 700 · Miami, FL 33161 · Tel: (305) 579-0008 · Fax: (305) 563-7055
www.danielcourtneylaw.com · dc@danielcourtneylaw.com

that "nosings on stair treads should be kept to minimum dimensions in order to reduce the risk of passengers tripping over them and should be the same sectional shape on all treads of a stairway"; and

c. ASTM-F1166-07, requiring that "the top tread shall be flush with the walking surface to which the stair is attached."

128. On or about June 12, 2024, CARNIVAL and/or its agents, servants, and/or employees breached that duty in one or more of the following ways:

a. By failing to adequately select, design, and/or approve stairway nosings that would remain flush, stable, and free from separation or protrusion when subjected to ordinary passenger use and maintenance;

b. By failing to select, design, and/or approve a stairway nosing system that did not have a propensity to raise, gap, or separate from the carpet, thereby creating a hidden tripping hazard;

c. By failing to implement safer alternative stairway nosing materials or configurations that were available and would have eliminated or significantly reduced the risk of passengers tripping;

d. By failing to design and/or approve the stairway with appropriate and uniform slip-resistant features, including nosings consistent in shape and dimension across the stairway, as required by applicable maritime safety standards;

e. By failing to design the stairway area in a way that facilitated safe maintenance, inspection, and cleaning, knowing that wear and tear would cause deterioration of the nosings; and/or

f. By failing to adequately test, evaluate, and monitor the performance of the nosings in light of the foreseeable and high passenger traffic on interior

10800 Biscayne Blvd · Suite 700 · Miami, FL 33161 · Tel: (305) 579-0008 · Fax: (305) 563-7055
www.danielcourtneylaw.com · dc@danielcourtneylaw.com

stairways.

129.    The above acts and/or omissions caused and/or contributed to the Plaintiff being severely injured because Plaintiff's incident would not have occurred but for CARNIVAL's failure to adequately design, select, and/or approve reasonable safe flooring surface for passenger use in the subject area.

130.    At all times material hereto, CARNIVAL knew of the foregoing dangerous conditions causing Plaintiff's incident and failed to inspect and/or maintain the subject area, or the conditions existed for a sufficient length of time so that CARNIVAL, in the exercise of reasonable care under the circumstances, should have learned of them.  This knowledge was or should have been acquired through CARNIVAL's set up, maintenance, inspection and/or supervision of the subject area and/or through prior incidents involving slip and falls where the injured passenger alleged the floor had raised, worn, and warped stair nosing and the presence of liquid on or near the stair surface which was unreasonably slippery and/or unsafe flooring conditions while aboard CARNIVAL's vessels, including, but not limited to, the following slip and falls on CARNIVAL vessels:

a.    *Dove v. Carnival Corporation,* Case No: 1:24-cv-24552 (passenger tripped over raised nosing while descending on an interior staircase);

b.    *Lambert v. Carnival Corporation,* Case No: 1:20-cv-24554 (passenger tripped over defective stair nosing while descending on an interior staircase); and

c.    *Ramirez v. Carnival Corporation,* Case No: 1:22-cv-21202 (passenger tripped over raised nosing while descending on an interior staircase).

131.    At the time CARNIVAL refit the subject vessel in 2023, it was well aware of the dangers caused by the stairway nosings CARNIVAL selected, yet it chose to

32

keep them in the subject vessel.

132.     As a direct and proximate result of the negligence of Defendant, CARNIVAL, PLAINTIFF suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, past lost wages, loss of future earning capacity, and expense of hospitalization, and medical and nursing care and treatment.  The losses are either permanent or continuing in nature and PLAINTIFF will continue to suffer the losses in the future.

WHEREFORE, PLAINTIFF demands judgment for damages against the Defendant together with costs of this action, prejudgment interest, and any other relief deemed just and appropriate by this Honorable Court.  Furthermore, PLAINTIFF demands trial by jury of all matters so triable as a matter of right.

### COUNT IX – GENERAL NEGLIGENCE
### (Direct Liability)

*PLAINTIFF hereby re-alleges paragraphs 1 through 45 as if fully set forth herein.*

133.     At all material times, CARNIVAL owed the Plaintiff, as a fare paying passenger, a duty to warn passengers of hazards of which it knew or should have known in the exercise of reasonable care its passengers may reasonably be expected to encounter on the vessel.

134.     On or about June 12, 2024, CARNIVAL through its crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with the CARNIVAL, breached the duty of care owed to the Plaintiff and were negligent in one or more of the following ways:

    a. Failure to provide passengers, including Plaintiff, with a reasonably safe area to traverse aboard the vessel;

    b. Failure to provide proper and/or sufficient instructions to passengers so

33

that passengers, including Plaintiff, had a reasonably safe area to traverse aboard the vessel;

c.  Failure to provide adequate slip resistant materials and/or non-skid strips in light of the anticipated weather conditions, sea conditions, and traffic given the anticipated purpose of the subject area;

d.  Failure to select and/or utilize reasonably safe flooring material, slip resistant materials and/or non-skid strips so that the subject area aboard the vessel was reasonably safe for passengers like Plaintiff;

e.  Failure to adopt policies and procedures so that the subject area aboard the vessel was reasonably safe for passengers like Plaintiff;

f.  Failure to promulgate and/or enforce adequate policies and procedures to ensure that the subject area is adequately and regularly inspected, monitored, cleaned and maintained free of unreasonably slippery conditions and/or hazards where passengers like Plaintiff are expected to walk aboard the vessel;

g.  Failure to promulgate and/or enforce adequate policies and procedures to ensure that verbal warnings or warnings signs are placed on or around the subject area where passengers like Plaintiff are expected to walk aboard the vessel and/or that such areas are blocked off;

h.  Failure to properly train, supervise and/or monitor crewmembers so that subject area aboard the vessel was reasonably safe;

i.  Failure to ascertain the cause of prior similar accidents happening on any of the CARNIVAL's vessels fleet wide so as to take adequate measures to prevent their reoccurrence, and more particularly Plaintiff's accident; and/or

10800 Biscayne Blvd · Suite 700 · Miami, FL 33161 · Tel: (305) 579-0008 · Fax: (305) 563-7055
www.danielcourtneylaw.com · dc@danielcourtneylaw.com

j.   Other acts and/or omissions that may be revealed through discovery.

135.   At all times material hereto, CARNIVAL knew of the foregoing dangerous conditions causing Plaintiff's incident and failed to inspect and/or maintain the subject area, or the conditions existed for a sufficient length of time so that CARNIVAL, in the exercise of reasonable care under the circumstances, should have learned of them. This knowledge was or should have been acquired through CARNIVAL's set up, maintenance, inspection and/or supervision of the subject area and/or through prior incidents involving slip and falls where the injured passenger alleged the floor was unreasonably slippery and/or unsafe flooring conditions while aboard CARNIVAL's vessels, including, but not limited to, the following slip and falls on CARNIVAL vessels:

136.   At all times material hereto, CARNIVAL knew of the foregoing dangerous conditions causing Plaintiff's incident and failed to inspect and/or maintain the subject area, or the conditions existed for a sufficient length of time so that CARNIVAL, in the exercise of reasonable care under the circumstances, should have learned of them. This knowledge was or should have been acquired through CARNIVAL's set up, maintenance, inspection and/or supervision of the subject area and/or through prior incidents involving slip and falls where the injured passenger alleged the floor had raised, worn, and warped stair nosing and the presence of liquid on or near the stair surface which was unreasonably slippery and/or unsafe flooring conditions while aboard CARNIVAL's vessels, including, but not limited to, the following slip and falls on CARNIVAL vessels: *Dove v. Carnival Corporation,* Case No: 1:24-cv-24552 (passenger tripped over raised nosing while descending on an interior staircase); *Lambert v. Carnival Corporation,* Case No: 1:20-cv-24554 (passenger tripped over defective stair

10800 Biscayne Blvd · Suite 700 · Miami, FL 33161 · Tel: (305) 579-0008 · Fax: (305) 563-7055
www.danielcourtneylaw.com · dc@danielcourtneylaw.com

nosing while descending on an interior staircase); and *Ramirez v. Carnival Corporation,* Case No: 1:22-cv-21202 (passenger tripped over raised nosing while descending on an interior staircase). These are only three (3) of a multitude of instances in which CARNIVAL had been placed on notice of the propensity of the nosing of interior staircases to deteriorate and pose a significant risk to traversing passengers.

137. As a direct and proximate result of the negligence of Defendant, CARNIVAL, PLAINTIFF suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, past lost wages, loss of future earning capacity, and expense of hospitalization, and medical and nursing care and treatment. The losses are either permanent or continuing in nature and PLAINTIFF will continue to suffer the losses in the future.

WHEREFORE, PLAINTIFF demands judgment for damages against the Defendant together with costs of this action, prejudgment interest, and any other relief deemed just and appropriate by this Honorable Court. Furthermore, PLAINTIFF demands trial by jury of all matters so triable as a matter of right.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues so triable.

DATED this 29th day of August, 2025.

> Daniel W. Courtney, P.A.
> 10800 Biscayne Boulevard
> Suite 700
> Miami, Florida, 33161
> Telephone: (305) 579-0008
> Facsimile: (305) 563-7055
>
> By: s/ Daniel W. Courtney
> Daniel W. Courtney, Esq.
> Florida Bar No: 0499781

36

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 29, 2025, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on the counsel of records or pro se parties identified on the below Service List in the manner specified, either via transmission of Notices of Electronic Filing generate by CM/EFC or in some other authorized manner for those counsel of parties who are not authorized to receive electronically Notices of Electronic Filing.

DANIEL W. COURTNEY, P.A.
10800 Biscayne Blvd
Suite 700
Miami, Florida, 33161
Telephone: (305) 579-0008
Facsimile: (305) 563-7055

By:   s/ Daniel W. Courtney
      Daniel W. Courtney, Esq.
      Florida Bar No: 0499781
      dc@danielcourtneylaw.com

**SERVICE LIST**

**DANIEL W. COURTNEY**
Florida Bar No: 0499781
dc@danielcourtneylaw.com
Maria.wright@danielcourtneylaw.com
Tifanny.perez@danielcourtneylaw.com
Daniel W. Courtney, P.A.
10800 Biscayne Blvd, Suite 700
Miami, Florida, 33161
Telephone: (305) 579-0008
Facsimile: (305) 563-7055
*Counsel for Plaintiff*

**MICHAEL J. DRAHOS**
Florida Bar No. 0617059
Michael.Drahos@Gray-Robinson.com
**W. COOPER JARNAGIN**
Florida Bar No. 117767
Cooper.Jarnagin@Gray-Robinson.com
**ASHLEY GENOESE**
Florida Bar No. 1019357
Ashley.Genoese@Gray-Robinson.com
GrayRobinson, P.A.
515 North Flagler Drive, Suite 650
West Palm Beach, Florida 33401
Telephone: (561) 268-5727
Facsimile: (561) 268-5745
*Counsel for Defendant*